DUNNEVANT et al., Respondents, v. MOCKSOUD et al., Appellants.

**St. Louis Court of Appeals, January 22, 1907.**

1. **PRACTICE: Counterclaim: One Trial.** In an action for a money judgment, where defendant filed a counterclaim admitting the plaintiff's demand, the court erred in directing the jury to return a verdict for the plaintiff for the amount of his demand; the action was premature and the court should have first submitted the issues upon the counterclaim.

2. ———: ———: ———: **Waiver of Error.** But the defendant waived the error by proceeding to trial as the court directed upon the counterclaim, and was not prejudiced thereby.

3. ———: **Nonsuit: Involuntary Nonsuit.** Defendant admitted the plaintiff's demand and filed a counterclaim for damages and, on a trial of the counterclaim, all evidence tending to prove damage was excluded by the court, whereupon defendant took a nonsuit on his counterclaim. *Held*, the nonsuit was not voluntary and defendant could appeal from a ruling of the trial court refusing to set it aside.

4. **DAMAGES: Nominal Damages.** In an action for the balance due plaintiff on a contract to erect a building for the defendant, where the defendant filed a counterclaim alleging that he was damaged by the failure of the plaintiff to finish the building within the time agreed upon in the contract, the defendant on proof of those allegations was entitled to at least nominal damages, and it was error to refuse to hear evidence thereon.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

REVERSED AND REMANDED.

Dunnevant v. Mocksoud.

*E. J. O'Brien* and *Thomas H. Sprinkle* for appellants.

(1) The defendants' damages herein are not speculative or remote, but were the immediate, necessary and natural result of the wrongful act of the plaintiff. Grieveaud v. Railroad, 33 Mo. App. 466. Probable profits from a legitimate element of damages, when their extent can be shown with reasonable certainty. Stewart v. Patten, 65 Mo. App. 21; Gildersleeve v. Overstoltz, 90 Mo. App. 518; Shouse v. Neiswanger, 18 Mo. App. 236; Dengler v. Auer, 55 Mo. App. 548; Ruff v. Rinaldo, 55 N. Y. 664; Industrial Works v. Mitchell, 114 Mich. 29; Satchwell v. Williams, 40 Conn. 371; Bontin v. Rudd, 82 Fed. 685; Clark v. Koerner, 61 S. W. 30; Wolff Shirt Co. v. Frankenthal, 96 Mo. App. 307; Morgan v. Ross, 74 Mo. 324; Brand v. Schuchman, 60 Mo. App. 70. (2) A party who has broken his contract cannot escape liability because of the difficulties there may be in finding a perfect measure of damages. Sutherland on Damages, sec. 704, p. 2136; Holt v. Mfg. Co., 136 Cal. 232; Greenleaf on Ev., p. 253; Hyatt v. Railroad, 19 Mo. App. 294; Smith v. Telegraph Co., 83 Ky. 104; Hunt v. Railroad, 1 L. R. A. 842, n.; Enc. Law and Pro., p. 109; Whyte v. McLaren, 151 Mass. 553.

*Xenophon P. Wilfley* and *Joseph S. McIntyre* for respondents.

(1) The claim of damages for the loss of profits should be disallowed when such damages are remote, uncertain and speculative. Taylor v. McGuire, 12 Mo. 204; Taylor v. McGuire, 13 Mo. 517; Calloway Mining & Mfg. Co. v. Clark, 32 Mo. 305; Wilson v. Russell, 91 Mo. App. 275; Geldersleeve v. Overstoltz, 90 Mo. 518; Connoble v. Clark, 38 Mo. App. 476; Ijams v. Life Assurance Assn., 185 Mo. 466; Wells v. National Life Assn. of Hartford, 53 L. R. A. 33. (2) When a voluntary nonsuit is

taken, the party abandons his action, and no appeal can be taken. Williams v. Finks, 156 Mo. 507; Green County Bank v. Gray, 146 Mo. 568; Chouteau v. Rowse, 90 Mo. 191; McClure v. Campbell, 148 Mo. 96; Layton v. Riney, 33 Mo. 86.

STATEMENT.—In 1904, defendants procured from the Louisiana Purchase Exposition Company, a concession to erect a theater building on what was known as the "Pike," and to give theatrical exhibitions therein during the exposition period, ending December 1, 1904. On July 6, 1904, plaintiffs agreed and contracted with the defendants to furnish the material and erect the building for the sum of $4,733. The contract was in writing and contains, among others, the following provisions:

"Art. VI. The contractor shall complete the several portions and the whole of the work comprehended in this agreement, by and at the time or times hereinafter stated, to-wit:

"The contractor shall have the building sufficiently advanced in fourteen days from the day the permit for its erection is granted by the Exposition Company, and have it entirely completed in twenty-two days from date of permit.

"The owner shall be allowed to install any work required during the erection of the building."

The building was completed but not until after the expiration of nineteen days from the date it was agreed it should be completed and turned over to defendants. After its completion defendants took possession of the building and used it as a theater until the close of the exposition. Two thousand three hundred and sixty-six dollars and fifty cents of the contract price for the building was paid, leaving a balance of $2,641.50 due. The suit is to recover this balance.

The answer (omitting caption) is as follows:

"Now come the defendants by leave of court and

file this their joint amended answer to the plaintiffs' petition herein and therein filed.

"They deny each and every allegation of said petition.

"The defendants for further answer and cause of action and counterclaim against the plaintiffs herein say:

"That on the sixth day of July, 1904, the plaintiffs and defendants signed an agreement, whereby the plaintiffs agreed to provide all the materials and perform all the work for the erection and construction of a theater building in the west yard of 'Cairo' concession facing the Pike of the Louisiana Purchase Exposition, and have the building sufficiently advanced for occupation by defendants in fourteen days from the day the permit for its erection is granted by the Exposition Company (which permit was granted on the — day of July, 1904), and have it entirely completed in twenty-two days from said last mentioned date, for which defendants agreed to pay plaintiffs the sum of $4,733, to which $375 was subsequently added, making $5,108, one-half of the amount to be paid when the defendants' were given possession of the said building, and the balance within sixty days after the completion of the work.

"That defendants duly performed all the conditions thereof on their part; that plaintiffs entered upon the performance of the work under said contract upon its execution and obtained said permit, and began the erection of said theater building, but neglected to have the same sufficiently advanced for occupation by defendants in fourteen days from the day said permit was granted, and neglected to have the same entirely completed in twenty-two days thereafter, and plaintiffs neglected to keep their said agreement to complete said theater, and failed, neglected and refused so to do for a period of nineteen exposition days in which said theater could and but for said plaintiffs' neglect would have been run

and made pecuniarily of great profit and advantage to defendants in that defendants lost the net profits of nineteen days' earning in running and operating said theater; which, measured by the net profits as made for nineteen days immediately after opening on the twenty-third of August, 1904, would amount to the sum of $2,385, which sum, together with the amount of $2,466.40, cash paid on said contract to plaintiffs deducted from the total amount of $5,108, would entitle the plaintiffs to the balance of $256.50, of all which the plaintiffs had due notice. That by reason of the plaintiffs' negligence, default and failure to complete said theater in the stipulated twenty-two days after said permit was granted, defendants were deprived of the use and occupancy thereof, and have been deprived of the said profits of said concession and said theater for the period of nineteen days and have been otherwise injured.

"That these defendants are actually damaged in said sum of $2,385 by plaintiffs as aforesaid, and they pray judgment therefor and that the same be set off against plaintiffs' claim.

"And for the balance of $256.50 due plaintiffs, defendants hereby offer to pay the same, and therefore pray to be hence dismissed."

Without hearing any evidence, and over the objection of the defendants, the court, on the motion of the plaintiffs, gave the following instruction to the jury:

"The court instructs the jury that it is admitted by the pleadings in this case that defendants are indebted to plaintiffs in the sum of $5,108, less the amount already paid, to-wit, $2,466.50, leaving a balance due plaintiffs from defendants of $2,641.50, for which amount you will return a verdict for plaintiffs, together with interest on same at six per cent per annum from April 15, 1905."

Whereupon the jury returned the following verdict:

"We, the jury, in the above entitled cause, find in

favor of the plaintiffs on the cause of action stated in the petition, and we assess its damages at the sum of $2,651.62."

And the court rendered judgment upon the verdict.

After this irregular proceeding, the court directed the defendants to proceed with their counterclaim.

J. E. Neimy, one of the defendants (after testifying that the building was not turned over to them until August 20, 1904, and was opened as a theater three days thereafter, and that it should have been turned over to them, under the terms of the contract, on July 29, 1904) was asked in regard to the loss of profits by the delay in getting possession of the building. Upon objections interposed by the plaintiffs, the court said:

"I will state now that the court will have to rule against the defendants on the theory of loss of profits. If the court be in error I want the defendants to get the full benefit as to the ruling, which will, in all probability, be made against them. I do not want to interfere with the examination, but my view is, you cannot recover on the theory of loss of profits on the Pike. In other words, I do not think that you are entitled to recover upon anything which is so speculative as profits that would have been made in the management of a theatrical show. This is not on the theory that it is not, could not have been in the contemplation of the parties at the time of entering into it, but the theory that it is indefinite, impossible of making it definite."

Thereupon defendants took a nonsuit with leave to move to set the same aside. A timely motion to set aside the nonsuit was filed and overruled by the court, whereupon defendants appealed.

BLAND, P. J. (after stating the facts).—1. In a suit at law for a money judgment, where there is but one count in the petition, and but one in a counterclaim

filed, there can be but one judgment (R. S. 1899, sec. 726). The plaintiffs' demand was admitted by the pleadings, hence there was nothing to submit to the jury but the issues raised by the counterclaim and the reply thereto. The direction to the jury, to return a verdict for the plaintiff for $2,651.62, was premature, and the procedure irregular, and defendants might have taken an exception thereto and, in the event the court had refused, on proper motion, to set aside the verdict, successfully prosecuted an appeal to this court. By acquiescing in the direction of the court to proceed to trial on the counterclaim, and by the introduction of evidence tending to prove the same, defendants waived the irregularity (Miller v. Railroad, 162 Mo. 424, 63 S. W. 85) and as they were not prejudiced by the action of the court in prematurely directing the verdict for plaintiffs, the irregularity furnishes no ground for a reversal of the judgment. [Seay v. Sanders, 88 Mo. App. 478; Miller v. Railroad, supra.]

2. The point is made by plaintiffs, that the nonsuit taken by the defendants was a voluntary one and, therefore, no appeal would lie. On the evidence of Neimy, that plaintiffs had breached the contract to build the house and deliver it to defendants in twenty-two days, defendants were undoubtedly entitled to at least nominal damages on their counterclaim; but they asked no instruction whatever and, on an adverse ruling of the court as to the admissibility of certain evidence, took a nonsuit.

In Greene County Bank v. Gray, 146 Mo. l. c. 570, 48 S. W. 447, the court, through BRACE, P. J., said: "This court entertains jurisdiction to review the action of the circuit court in such cases (of nonsuit) only when the circuit court upon the trial of the cause decides questions which cover the plaintiff's case, precludes a recovery and obliges him to submit to a nonsuit. It cannot interfere in cases where parties voluntarily or

needlessly take a nonsuit" (citing a number of Missouri cases, and adding), "When a voluntary nonsuit is taken the plaintiff abandons his action and from the judgment entered upon it no appeal will lie."

In McClure v. Campbell, 148 Mo. 96, 49 S. W. 881, it is said: "Until an instruction is given in writing there is no such adverse ruling of the court as precludes a recovery by plaintiff. So that when defendant demurred to plaintiff's evidence, and the court announced that it would grant such instruction, and plaintiff thereupon asked leave to take a nonsuit with leave to move to set the same aside, such nonsuit was voluntary." A like ruling, under like circumstances, was made by us in Graham v. Parsons, 88 Mo. App. 385; Carter v. O'Neil, 102 Mo. App. 391, 76 S. W. 717. The rulings in these cases are based on a state of facts where the plaintiff's case could only be uprooted by an instruction to the effect, that on the evidence plaintiff could not recover, and should be construed in the light of these facts.

In State ex rel. v. Thompson, 81 Mo. App. l. c. 559, in respect to the rule, we said: "The rule is that so long as the trial court leaves the plaintiff a substantial cause of action, his withdrawal from the court must be regarded as voluntary and deprives him of the right of appeal. [Chiles v. Wallace, 83 Mo. 85; Roeder v. Shyrock, 61 Mo. App. 487; Lorin v. Cook, 60 Mo. 564; Layten v. Riney, 33 Mo. 87.] When the court ruled that the recovery must be confined to nominal damages it did not leave to relator a substantial cause of action within the meaning of the decisions."

The counterclaim alleged substantial damages ($2,385.46) caused by the failure of plaintiffs to complete the building in the time agreed upon. All evidence tending to prove this damage was excluded by the court, thereby denying defendants the right to recover for the only breach of the contract relied upon by

them to offset the balance due plaintiffs on the contract price of the building. In this state of the case the non-suit was not voluntary.

The counterclaim alleges defendants lost the net profits of nineteen exposition days, on account of the delay in the completion of the building, and that their damages should be measured by the net profits made for nineteen days immediately following the twenty-third of August, amounting, as alleged, to the sum of $2,385.46. In the colloquy between the trial judge and plaintiff's counsel, in respect to the admissibility of the excluded evidence, as well as in the brief of counsel, it appears defendants sought to prove their damages by introducing evidence of the net profits realized from the operation of the theater for the nineteen days immediately following August twenty-third. The learned trial judge ruled that such evidence would only tend to prove speculative damages, and excluded it.

It is the general rule that every person is responsible for the natural and usual consequences of his acts, and hence remote or speculative damages cannot be recovered for a breach of contract, unless stipulated for in the contract. [Hughes et al. v. Hood et al., 50 Mo. 350; Clemens v. Railroad, 53 Mo. 366.] When damages that might result from the breach of a contract to be performed in a specified time are unusual or extraordinary, it is prudent and customary for the parties to agree in advance what the damages shall be for delay; if they fail to do so, the recovery of the injured party will be confined to such damages as ordinarily result from delay in the performance of similar contracts. [Callaway Mining and Mfg. Co. v. Clark, 32 Mo. l. c. 309; Ijams v. Life Assurance Society, 185 Mo. 477, 84 S. W. 51; Taylor v. Maguire, 12 Mo. 313; Ib., on second appeal, 13 Mo. 517; Connoble v. Clark, 38 Mo. App. 476; Wilson & Son v. Russler & Gnagi, 91 Mo. App. 275.]

The case of Gildersleeve v. Overstoltz, 90 Mo. App.

518, cited and relied on by defendants, does not militate against this rule, as the damages in that case arose out of the commission of a trespass and the destruction of plaintiff's property, and a direct injury thereby to his business. But the defendants were entitled to at least nominal damages on their counterclaim and the evidence of J. E. Neimy, and the court erred in refusing to hear any evidence whatever. For this error, the judgment is reversed and the cause remanded. All concur.